## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

STEVEN McCONNAL,
     Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:14-cv-179

Dlott, J.
Litkovitz, M.J.

**REPORT AND**
**RECOMMENDATION**

    Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 12), the Commissioner's response in opposition to plaintiff's Statement of Errors (Doc. 19), and plaintiff's reply memorandum (Doc. 20).

## I. Procedural Background

    Plaintiff filed applications for DIB and SSI in September 2010, alleging disability since October 7, 2009, due to arthritis, depression, and post-traumatic stress disorder. These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Gregory G. Kenyon. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On November 21, 2012, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).  The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the

relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2012.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since October 7, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: hepatitis C, a history of non-specific back pain, an unspecified personality disorder, depression, and a history of drug and alcohol abuse (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he is unable to  climb ladders, ropes, or scaffolds.  He is unable to operate automotive equipment.  He cannot work around hazards such as unprotected heights or dangerous machinery.  He is limited to performing tasks that are unskilled, simple and repetitive.  He can have occasional contact with coworkers and supervisors.  He can have no public contact.  He can perform no job involving teamwork or tandem tasks.  He can perform no jobs involving rapid production pace work or strict production quotas. He is limited to performing jobs in a relatively static work environment in which there is very little, if any, change in the job duties or the work setting from one day to the next.  There can be no occupational exposure to drugs or alcohol.
>
> 6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

---

[1]Plaintiff's past relevant work was as a material handler.  (Tr. 20).

7. The [plaintiff] was born [in] . . . 1952 and was 56 years old, which is defined as an individual of advanced age, on the alleged disability onset date. He is now 59 years old and is consequently still classified as an individual of "advanced age." (20 CFR 416.963).

8. The [plaintiff] has a high school equivalent education (a GED) and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from October 7, 2009, through the date of [the ALJ's] decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-21).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*,

---

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the unskilled medium job of janitor/cleaner, with 7,800 jobs in the local economy and 2,000,000 jobs in the national economy, and the light unskilled jobs of cleaner and stock clerk, with 3,880 jobs in the local economy and over 1,500,000 jobs in the national economy.   (Tr. 21).

402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

Plaintiff presents several arguments on appeal which the Court has grouped together under the following errors: (1) the ALJ erred by failing to properly weigh the medical opinion evidence of record (Doc. 12, ¶¶ III.A, B, D); (2) the ALJ erred to the extent he based the non-disability determination on a finding that plaintiff was non-compliant with treatment (¶ III 3.C); (3) the ALJ erred by failing to find that plaintiff meets the Listing of Impairments, §§ 12.03(B) and (C)(2) for paranoid and psychotic disorders (¶¶ III.E, F); and (4) the ALJ erred by finding that plaintiff has the residual functional capacity (RFC) for substantial gainful activity because the evidence supports a finding that he would miss more than one day from work each month (¶ III.G).

5

### 1. Weighing of the medical opinion evidence

### a. Regulatory standards

"The Commissioner has elected to impose certain standards on the treatment of medical source evidence." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). "These standards, set forth in administrative regulations, describe (1) the various types of evidence that the Commissioner will consider, 20 C.F.R. § 404.1512; (2) who can provide evidence to establish an impairment, 20 C.F.R. § 404.1513; and (3) how that evidence will be evaluated, 20 C.F.R. § 404.1520b." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). This evidence may include "medical opinions, which 'are statements from physicians and psychologists . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [ ] symptoms, diagnosis and prognosis,' physical and mental restrictions, and what the claimant can still do despite his or her impairments." *Id*. (citing 20 C.F.R. 404.1527(a)(2)).

The applicable regulations set forth three types of acceptable medical sources upon which an ALJ may rely: treating source, nontreating source, and nonexamining source. 20 C.F.R. §§ 404.1502, 416.902. When treating sources offer opinions, the Social Security Administration is to give such opinions the most weight and is procedurally required to "give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). This requirement only applies to treating sources. *Id*. at 876. The opinion of a non-treating but examining source is entitled to less weight than the opinion of a treating source, but is generally entitled to more weight than the opinion of a source who has not examined the claimant. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). *See also Smith,* 482 F.3d at 875. When deciding the weight to give a non-treating source's opinion, the ALJ should consider the medical specialty of

the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). Because a non-examining source has no examining or treating relationship with the claimant, the weight to be afforded the opinion of a non-examining source depends on the degree to which the source provides supporting explanations for his opinions and the degree to which his opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources. *Id*.

The ALJ must consider all available evidence in an individual's case record, including evidence from medical sources. Social Security Ruling (SSR) 06-03p, 2006 WL 2329939 (Aug. 9, 2006).[3] The term "medical sources" refers to both "acceptable medical sources" and health care providers who are not "acceptable medical sources." *Id*. (citing 20 C.F.R. §§ 404.1502, 416.902). Licensed physicians and licensed or certified psychologists are "acceptable medical sources." *Id*. (citing 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). Only "acceptable medical sources" as defined under 20 C.F.R. §§ 404.1513(a), 416.913(a) can provide evidence establishing the existence of a medically determinable impairment, give medical opinions, and be considered treating sources whose medical opinions may be entitled to controlling weight. *Id*.

Certified nurse practitioners and mental health case managers are not "acceptable medical sources" and instead fall into the category of "other sources." 20 C.F.R. §§ 404.1513(d), 416.913(d). Information from "other sources" may be based on special knowledge of the individual and may provide insight into the severity of an individual's impairment and how it

---

[3]"Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner. 20 C.F.R. § 402.35(b)(1). In *Wilson,* 378 F.3d at 549, the court refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations, but *assumed* that they are. [The Court] makes the same assumption in this case." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (emphasis in original).

affects the individual's ability to function.  SSR 06-03p.  It may be appropriate to give more

weight to the opinion of a medical source who is not an "acceptable medical source" if he or she

has seen the individual more often than the treating source and has provided better supporting

evidence and a better explanation for his or her opinion.  SSR 06-03p.  Factors to be considered

in evaluating opinions from "other sources" who have seen the claimant in a professional

capacity include how long the source has known the individual, how frequently the source has

seen the individual, how consistent the opinion of the source is with other evidence, how well the

source explains the opinion, and whether the source has a specialty or area of expertise related to

the individual's impairment.  *Id. See also Cruse v. Comm'r of Social Sec.*, 502 F.3d 532, 541

(6th Cir. 2007).  Not every factor will apply in every case.  SSR 06-03p.  The ALJ "should

*explain* the weight given to opinions from these 'other sources,' or otherwise ensure that the

discussion of the evidence in the determination or decision allows a claimant or subsequent

reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the

outcome of the case."  SSR 06-03p, 2006 WL 2329939, at *6 (emphasis added).

**b. The mental health assessments of record**

The record includes medical assessments completed by Brenda McKinstry,

CNP/PMHNP.[4]  (Tr. 389-91, 568-88).  Ms. McKinstry treated plaintiff over the course of more

than two years.  She completed a Mental Status Questionnaire on December 15, 2010, indicating

that she had first seen plaintiff on May 18, 2010, and had last seen him on December 14, 2010.[5]

(Tr. 389).  She reported that plaintiff dressed appropriately, his speech was clear, his thoughts

were organized, and he was oriented "x 3."  (*Id.*).  Plaintiff's affect was restricted, his mood was

---

[4] Ms. McKinstry is a Certified Nurse Practitioner/Psychiatric Mental Health Nurse Practitioner.
[5] Plaintiff erroneously attributes this assessment to Mary Binkley, plaintiff's mental health case manager, but the Mental Status Questionnaire is signed and dated by Ms. McKinstry. (Tr. 391). Ms. Binkley completed the Daily Activities Questionnaire attached to the Mental Status Questionnaire. (Tr. 392-93).

anxious, and his insight and judgment were poor. (*Id*.). Plaintiff complained of poor

concentration, poor memory, anxiety, and excessive worry, and he reported seeing things. (*Id*.).

Ms. McKinstry diagnosed plaintiff with Major Depressive Disorder with psychotic features and

alcohol abuse. (Tr. 390). He was being treated with Seroquel and Cymbalta. (*Id*.). Ms.

McKinstry opined that plaintiff was not capable of managing any benefits that may be due. She

opined that he had difficulty focusing and anxiety; poor attention span; poor concentration;

social anxiety; and poor adjustment. (*Id*.). Ms. McKinstry opined that plaintiff would react

poorly to the pressures in work settings or elsewhere involving simple and routine or repetitive

tasks, noting that increased stress, increased anxiety and nervousness may cause

decompensation. (*Id*.).

Ms. McKinstry subsequently completed a Medical Assessment of Ability to Do Work-

Related Activities (Psychological) on April 4, 2012. (Tr. 586-88). She opined that plaintiff was

"extremely limited," *i.e.*, "expected to function independently, appropriately, and effectively less

than 50% of the time," in all areas related to the ability to make occupational adjustments, which

included: the ability to follow work rules, relate to co-workers, deal with the public, use

judgment, interact with supervisors, deal with work stresses, function independently, maintain

attention and concentration, and persist at work-like tasks. (Tr. 586). Plaintiff was also assessed

as "extremely limited" in his ability to understand, remember and carry out complex job

instructions; understand, remember and carry out detailed but not complex job instructions; and

understand, remember and carry out simple job instructions. (Tr. 587). Ms. McKinstry opined

that plaintiff's "mental health remains very fragile in spite of medication management. Any

increase in stress may cause decompensation." (*Id*.). With the exception of the ability to

maintain personal appearance, which she assessed as "good," plaintiff was assessed as

9

"extremely limited" in all areas related to the ability to make personal and social adjustments. (Tr. 587). These included the ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate daily reliability on a full-time basis. (*Id*.). In support of her assessment, Ms. McKinstry stated that plaintiff "remains symptomatic in spite of medication. His mental health is fragile and he is at increased risk of decompensation." (*Id*.). She opined that plaintiff would miss four or more days of work each month due to psychological symptoms. (Tr. 588). Ms. McKinstry concluded that plaintiff was unemployable and that he was "at increased risk of decompensation with any changes and increased stress." (*Id*.).

Finally, Ms. McKinstry wrote a letter to plaintiff's counsel dated October 10, 2012, stating that it was her professional opinion that plaintiff "is unemployable due to major depression with psychotic features." (Tr. 626). She wrote that "[i]n spite of medication and case management, his mental health is unstable and fragile." (*Id*.). Ms. McKinstry also wrote that plaintiff complained of "difficulty starting and completing tasks, poor focus and concentration, problems with memory, getting lost when he leaves home, and difficulty finding his way home." (*Id*.). As a result of his memory problems, she had referred him for further evaluation to rule out dementia. (*Id.*). Ms. McKinstry further noted that plaintiff complained of "daily panic attacks and paranoia causing him to put his head in the refrigerator and searching his home repetitively for possible intruders." (*Id*.). Although plaintiff denied alcohol and substance abuse, she opined that "relapse is probable with any increase in stress" due to the instability of plaintiff's mental health. (*Id*.). Ms. McKinstry concluded that plaintiff's prognosis is poor. (*Id*.).

Consultative examining psychologist Dr. Norman Berg, Ph.D., examined plaintiff on January 31, 2011, and prepared a report. (Tr. 394-400). Plaintiff reported to Dr. Berg that he saw a psychiatrist once a month for medication and a mental health case manager once a month

for support. (Tr. 394-95). Plaintiff reported that he felt depressed and at times he felt suspicious of others. (Tr. 396). Dr. Berg reported that plaintiff appeared to be moderately depressed based on his subjective reports and his facial expression. (Tr. 397). Plaintiff reported "fair sleep" with medication but also indicated that he may only sleep a couple of hours at a time, and he seemed somewhat tired at the morning evaluation. (*Id.*). Plaintiff mentioned feeling anxious about a number of issues but did not appear overly anxious or tense. (*Id.*). Dr. Berg reported that plaintiff did not have panic attacks or agoraphobia. (*Id.*). Dr. Berg found no evidence of psychosis or underlying decompensation processes, and he further found that at the time of the evaluation there was "no indication of hallucinations, delusions, significant confusion, or suspiciousness/paranoid ideation." (*Id.*). Plaintiff reported hearing voices in the past, although this was "less with the medicine," and he thought he might see shadows or a face at times. (*Id.*). Dr. Berg was unable to diagnose plaintiff with a psychotic condition based on his presentation or description of his symptoms, and Dr. Berg noted that the referral information he had indicated that it was unclear to at least one examiner if plaintiff exhibited psychotic features. (*Id.*). Dr. Berg reported that plaintiff functioned in a moderate to moderately slow manner during the exam, but he was able to concentrate and he did not appear overly anxious or depressed. (Tr. 398). Dr. Berg reported that plaintiff was able to wash, dress and attend to his personal hygiene; he was able to cook, although someone cooked for him at the homeless shelter where he resided; he did some cleaning and shopping; and he was able to do laundry. Plaintiff reported that he attended programming at the shelter and he read to try to keep from becoming depressed. (Tr. 399). Memory processes appeared adequate and he had no difficulty with speech or language. (Tr. 400). Dr. Berg concluded that plaintiff was not impaired in his ability to understand, remember and follow instructions; he was not impaired in his ability to maintain attention,

11

concentration, persistence and pace to perform simple tasks and to perform multi-step tasks; he was mildly impaired in his ability to relate to others, including fellow workers and supervisors; and he was moderately impaired in his ability to withstand the stress and pressure associated with day-to-day work activity. (*Id*.).

State agency reviewing psychologist Dr. Irma Johnston, Psy.D., issued a mental RFC assessment on February 25, 2011, assessing plaintiff as not significantly limited in the following abilities: the ability to carry out very short and simple instructions, carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, and make simple work-related decisions. (Tr. 85-86). Dr. Johnston found plaintiff was moderately limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within regular tolerances, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 86). Dr. Johnston attributed these limitations to plaintiff's anxiety and depression, and she noted he lived in a men's shelter and attended classes there as well as "AA" and "NA" meetings. (*Id*.). She opined that plaintiff retained the capacity to understand, recall and carry out instructions for simple to moderately complex tasks in settings which are not fast paced and do not have strict production standards. (*Id*.). Dr. Johnston opined that plaintiff was only mildly limited in his social interactions, noting that he was able to live in a shelter with others and attend multiple meetings each week. (*Id*.). On July 8, 2011, state agency reviewing psychologist Dr. Karen Steiger, Ph.D., adopted Dr. Johnston's assessment based on her review of the record. (Tr. 131-33).

### c. Weight given the mental health assessments

The ALJ gave "great weight" to the assessments of the state agency reviewing psychologists, Drs. Steiger and Johnston, on the sole ground those assessments were "consistent with the objective findings of consultative examiner Dr. Berg." (Tr. 19). The ALJ gave "great weight" to the assessment of consultative examiner Dr. Berg, noting that Dr. Berg examined plaintiff in January 2011 and diagnosed plaintiff with depression, a personality disorder, a history of alcohol abuse which had been in remission for six months, and a history of polysubstance abuse; Dr. Berg assigned a GAF score of 57[6], which was consistent with the GAF score of 55 assigned to plaintiff in March 2010 during a diagnostic assessment by Central Community Health Board (CCHB) (Tr. 575) and was also consistent with an ability to perform competitive work activity; and Dr. Berg indicated that plaintiff's ability to understand, remember and follow instructions and to maintain attention, concentration, persistence and pace were not impaired, and he had only mild limitations in social functioning and stress tolerance. (Tr. 19). Relying on these opinions, the ALJ determined that plaintiff's impairments were properly accommodated by an RFC limiting him to performing tasks that are unskilled, simple and repetitive; occasional contact with coworkers and supervisors; no public contact; no work involving teamwork or tandem tasks; no jobs involving rapid production pace work or strict production quotas; jobs only in a relatively static work environment in which there is very little,

---

[6] The "GAF is a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006). A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, p. 32 (4th ed., text rev. 2000). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* at 34. The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 51-60 is indicative of "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks)" or "moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.*

if any, change in the job duties or the work setting from one day to the next; and no occupational exposure to drugs or alcohol. (Tr. 16-17).

The ALJ gave "little weight" to Ms. McKinstry's opinion assessing "extreme limitations" on the grounds: (1) she is not a psychologist, physician or other mental health care professional and is therefore not an "acceptable medical source" under 20 C.F.R. § 404.1513; and (2) the record does not show that plaintiff's paranoid tendencies or auditory/visual hallucinations "are so frequent and pervasive that they warrant an extreme level of limitation." (Tr. 20). The ALJ rejected Ms. McKinstry's October 2012 opinion that plaintiff is unemployable due to his impairments on the ground this is an issue reserved to Commissioner. (*Id.*, citing 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)).

### d. Plaintiff's allegations of error

Plaintiff alleges that the ALJ committed a number of errors when weighing the medical opinion evidence of record which warrant reversal and remand of this matter for an award of benefits. First, plaintiff alleges that the ALJ did not properly weigh the opinions of plaintiff's mental health care provider, Ms. McKinstry. Plaintiff alleges that the ALJ did not follow Social Security Ruling 06-3p and did not provide good reasons for rejecting Ms. McKinstry's opinions. Plaintiff contends that the treatment notes are consistent with Ms. McKinstry's assessments of plaintiff's mental limitations and that his level of functioning is inconsistent with the ability to perform sustained work activity.

Second, plaintiff alleges that the ALJ erred by giving great weight to the opinions of the non-examining psychologists. Plaintiff alleges that the ALJ applied a more rigorous standard of review when weighing the opinions of his mental health care provider than when weighing the opinions of the non-examining psychologists. Plaintiff alleges that the opinions of the non-

14

examining psychologists should have been afforded less weight than the opinions of his long-term mental health care provider because the reviewing psychologists did not form their opinions based on a review of the complete case record. To the contrary, plaintiff alleges the non-examining psychologists reviewed only a fraction of the mental health treatment records covering only a portion of the period of alleged disability.

Third, plaintiff contends that the ALJ erred by mischaracterizing the opinion of consultative examining psychologist, Dr. Berg, and scrutinizing that opinion less carefully than he scrutinized the opinions of plaintiff mental health care provider. Plaintiff notes that the ALJ erroneously stated that Dr. Berg found plaintiff had only mild limitations in tolerating stress (Tr. 19), whereas Dr. Berg in fact found moderate limitations in tolerating the stress and pressure of working. (Tr. 400). Plaintiff alleges this error was not harmless because a moderate limitation in this area could mean that he would have excessive absences or be off-task to a degree that would preclude him from maintaining competitive employment. Plaintiff further alleges that Dr. Berg's opinion was entitled to less weight than the opinions of his mental health care provider because Dr. Berg had no access to his longitudinal treatment records; his findings that there was no evidence of psychosis is unsupported; and Dr. Berg failed to mention panic attacks or paranoia and he minimized evidence of auditory and visual hallucinations.

**e. The ALJ erred by crediting the non-examining and one-time examining mental health sources over the opinions of plaintiff's mental health care provider.**

The ALJ's decision to credit the opinions of the non-examining and one-time examining mental health sources over the opinions of plaintiff's long-term mental health care provider, Ms. McKinstry, is not supported by substantial evidence. The ALJ was not required to give any special deference to Ms. McKinstry's opinion as neither Certified Nurse Practitioners nor Psychiatric Mental Health Nurse Practitioners are "acceptable medical sources"; instead, they are

considered "other sources" under the regulations. *See* 20 C.F.R. §§ 404.1513(a), (d), 416.913(a),

(d); *Desantis v. Comm'r of Soc. Sec.*, 24 F. Supp.2d 701, 710 (S.D. Ohio 2014) (Black, J.)

("While the adjudicator cannot give 'controlling weight' to non 'acceptable medical sources' in

disability claims, it can give 'great' weight to a non-[acceptable] medical source opinion, such as

a Psychiatric Mental Health Nurse Practitioner."). However, the ALJ failed to consider the SSR

06-03p factors (*i.e.*, how long Ms. McKinstry treated plaintiff, how frequently she saw plaintiff,

how consistent her opinions were with other evidence, how well she explained her opinions, and

whether she has a specialty or area of expertise related to plaintiff's impairment) and thereby

deprived the Court of a meaningful basis for judicial review. *Desantis*, 24 F. Supp.2d at 710

(ALJ erred by not considering SSR 06-03p factors in weighing opinion of Psychiatric Mental

Health Nurse Practitioner).

     Ms. McKinstry had a close and lengthy treatment relationship with plaintiff.[7] As of the

date of the ALJ hearing, she had treated plaintiff for approximately two and one-half years,

seeing him at least 20 times between May 2010 and September 2012. (*See* Tr. 469, 470, 471,

490, 498-512, 598, 603, 606, 608, 610, 622). Over the course of this extensive treatment period,

Ms. McKinstry noted auditory/visual hallucinations on numerous visits. (*See* Tr. 511, 5/18/10;

Tr. 508, 8/10/10; Tr. 507, 8/17/10; Tr. 503, 12/14/10; Tr. 502, 1/18/11; Tr. 501, 2/15/11; Tr. 500,

4/12/11; Tr. 499, 5/10/11). Ms. McKinstry also noted complaints of paranoia during several

treatment sessions. (Tr. 510, 6/1/10; Tr. 502, 1/18/11; Tr. 501, 2/5/11; Tr. 490, 8/23/11). In

addition to these symptoms, Ms. McKinstry consistently reported plaintiff's complaints of

---

[7] The Sixth Circuit has recognized that "many unemployed disability applicants receive treatment at clinics that render care to low income patients by providing mental health treatment through such [individuals]. The practical realities of treatment for those seeking disability benefits underscores the importance of addressing the opinion of a mental health counselor [or certified nurse practitioner] as a valid 'other source' providing ongoing care." *Cole v. Astrue*, 661 F.3d 931, 939 n.4 (6th Cir. 2011).

anxiety, depression, and insomnia, and she also noted complaints of difficulty concentrating, intrusive thoughts, and a sense of isolation. (Tr. 498-511).

The symptoms as reported by Ms. McKinstry are consistent with those reported in the CCHB Community Psychiatric Supportive Treatment (CPST) notes prepared by plaintiff's case manager at CCHB, Mary Binkley, QMHS.[8] (*See* Tr. 473-89, 491-94, 512-61, 567-70, 591-97, 599-602, 604-05, 609, 611-12, 614-16, 618-19, 623). Ms. Binkley had regular contact with plaintiff between May 2010 and September 2012, conferring with him on a regular basis during that time period. Ms. Binkley saw plaintiff over 55 times and had additional telephone contacts with him. In addition to meeting with plaintiff at CCHB or at his home, Ms. Binkley took plaintiff to appointments and accompanied him to the store. Ms. Binkley's notes consistently report audio and visual hallucinations. (*See* Tr. 550, 10/12/10- medication is effective but still hears voices; Tr. 552, 10/15/10- hears voices and feels someone touching him; Tr. 548, 10/19/10- auditory hallucinations; Tr. 547, 10/26/10- auditory hallucinations; Tr. 539, 12/14/10- visual hallucinations; Tr. 537, 12/21/10- auditory hallucinations; Tr. 534, 1/18/11- auditory and visual hallucinations; Tr. 527, 1/31/11- continued auditory and visual hallucinations; Tr. 525, 2/4/11- auditory and occasional visual hallucinations; Tr. 517, 4/18/11- continued auditory and visual hallucinations; Tr. 515, 5/10/11- auditory and visual hallucinations same or slightly decreased; Tr. 492, 7/19/11- continued auditory and visual hallucinations; Tr. 487, 8/29/11- continued auditory and visual hallucinations; Tr. 484, 10/5/11- hallucinations; Tr. 480, 11/1/11- continued hallucinations; Tr. 602, 2/3/12- continued hallucinations; Tr. 599, 4/3/12- continued auditory and

---

[8] The Ohio Administrative Code defines "Qualified mental health specialist" (QMHS) as "an individual who has received training for or education in mental health competencies and who has demonstrated, prior to or within ninety days of hire, competencies in basic mental health skills along with competencies established by the agency, and who is not otherwise designated as a provider or supervisor, and who is not required to perform duties covered under the scope of practice according to Ohio professional licensure. . . ." *See* Ohio Admin. Code 5122-24-01 (Sept. 7, 2011).

visual hallucinations;  Tr. 593, 5/1/12- continued hallucinations; Tr. 591, 5/14/12- continued hallucinations; Tr. 592, 6/4/12- continued hallucinations; Tr. 616, 7/31/12- continued hallucinations; Tr. 619, 8/16/12- continued hallucinations).  In addition to documenting plaintiff's consistent reports of auditory and visual hallucinations, Ms. Binkley documented plaintiff's ongoing paranoia.  (*See* Tr. 489, 6/23/11; Tr. 483, 10/18/11; Tr. 479, 11/14/11; Tr. 593, 5/1/12; Tr. 592, 6/4/12).  Ms. Binkley also documented plaintiff's anxiety, depression, insomnia, and panic attacks, as well as his inability to care for his children due to his mental condition.

Ms. McKinstry relied on these regularly documented symptoms when assessing plaintiff's mental limitations.  In the mental status questionnaire dated December 15, 2010, Ms. McKinstry reported that plaintiff complained of anxiety, excessive worry, seeing things, poor concentration, and poor memory.  (Tr. 389).  In her April 2012 assessment, Ms. McKinstry reported that plaintiff continued to be symptomatic despite treatment with medication and that his mental health remained "very fragile."  (Tr. 587-88).  She opined that he was "at increased risk of decompensation with any changes and increased stress."  (Tr. 588).  In her letter opinion dated October 12, 2012, Ms. McKinstry repeated that assessment, stating as follows:

> [Plaintiff] complains of difficulty starting and completing tasks, poor focus and concentration, problems with memory, getting lost when he leaves home, and difficulty finding his way home.  Due to problems with memory, I have referred him for further evaluation to rule out dementia.

> [Plaintiff] complains of daily panic attacks and paranoia causing him to put his head in the refrigerator and searching his home repetitively for possible intruders.

> At this time he denies alcohol/substance abuse, but due to the instability of his mental health, relapse is probable with any increase in stress.

> [Plaintiff's] prognosis is poor.

18

(Tr. 626).  Although the ALJ was entitled to reject Ms. McKinstry's opinion set forth in the letter that plaintiff was "unemployable due to depression with psychotic features" (*see* 20 C.F.R. §§ 416.927(d)(1), 416.927(d)(1))[9], it is noteworthy that Ms. McKinstry reported many of the same symptoms that she first reported in December 2010 and which she and Ms. Binkley consistently documented throughout the treatment period.

Contrary to SSR 06-03p, the ALJ did not consider the length of time Ms. McKinstry treated plaintiff and the frequency of their interactions when determining the weight to give her opinion.  Nor did the ALJ assess how consistent her opinion was with her treatment notes considered as a whole and with the other evidence, particularly the voluminous treatment notes of plaintiff's mental health case manager, Ms. Binkley.   In addition, the ALJ failed to consider that Ms. McKinstry has a specialty or area of expertise in psychiatric mental health.  *See Desantis*, 24 F. Supp.2d at 710 (ALJ erred in not assessing proper weight to Psychiatric Mental Health Nurse Practitioner who held a professional license issued by the State of Ohio and was qualified to render treatment and medical opinions.).  The ALJ's failure to consider these factors does not comply with the applicable Social Security Rulings and regulations and deprives the Court of a meaningful basis for review.  *See* SSR 06-03p (the ALJ "should *explain* the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case.") (emphasis added).   Absent this analysis, the Court is unable to meaningfully review the ALJ's decision giving "little weight" to the opinions of plaintiff's mental health care provider.  *See*

---

[9] Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a physician's opinion that a patient is disabled is not entitled to any special deference.  *Id.  See also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) ("The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician.") (citation and brackets omitted).

*Hurst v. Sec'y of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985) (the ALJ's articulation of reasons "for crediting or rejecting particular sources of evidence . . . is absolutely essential for meaningful appellate review.").

In addition, the ALJ erred by giving "great weight" to the opinions of the non-examining state agency psychologists without acknowledging that they did not have a significant portion of the medical and other records in this case when they rendered their opinions.  One of the factors the ALJ must consider in weighing medical opinions is "the extent to which an acceptable medical source is familiar with the other information in [the] case record."  20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6).  A state agency reviewing doctor's opinion may be entitled to greater weight than that of a treating or examining doctor in certain circumstances, such as when the "State agency medical . . . consultant's opinion is based on a review of a complete case record that . . . provides more detailed and comprehensive information than what was available to the individual's treating source."  *Blakley*, 581 F.3d at 409 (quoting SSR 96-6p, 1996 WL 374180, at *3).  However, where a non-examining source has not reviewed a significant portion of the record and the ALJ fails to indicate that he has "at least considered [that] fact before giving greater weight" to the reviewing doctor's opinion, the ALJ's decision cannot stand. *Blakley*, 581 F.3d at 409 (internal quotation omitted).   In this case, the later-generated treatment notes, observations, and opinions of Ms. McKinstry and Ms. Binkley contain a more detailed picture of plaintiff's functionality than any other record evidence and indicate a deterioration in plaintiff's functioning, particularly with respect to memory, that was not considered by the non-examining psychologists.  (*See* Tr. 626- Ms. McKinstry reported in October 2012 that plaintiff was experiencing memory problems for which she had referred him for further evaluation to rule out dementia).  The state agency psychologists did not examine this evidence prior to proffering

their opinions, making their opinions incomplete.  For these reasons, the ALJ erred in giving

"great weight" to the opinions of the non-examining psychologists in light of the significant

evidence discussed above which was not in the record at the time they conducted their reviews.

Finally, the ALJ erred by giving "great weight" to the opinion of the consultative

examining psychologist, Dr. Berg.  The ALJ's written decision sets forth Dr. Berg's diagnoses

and the mental limitations he assessed.[10]  (Tr. 19).  Other than reiterating Dr. Berg's findings, the

ALJ gave only one reason for adopting Dr. Berg's assessment.  The ALJ found that the GAF

score of 57 which Dr. Berg assessed was consistent with the GAF score of 55 assigned to

plaintiff in March 2010 during an initial diagnostic assessment conducted at CCHB (Tr. 575),

and the GAF was also consistent with an ability to perform competitive work activity.  (Tr. 19).

The ALJ did not otherwise consider the regulatory factors when weighing Dr. Berg's opinion.

*See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  The ALJ did not examine whether Dr. Berg had

considered the findings and opinions of plaintiff's long-term mental health care provider.  *See id.*

Nor did the ALJ consider whether Dr. Berg's assessment was consistent with the record as a

whole, including the treatment records which spanned a period of more than two years following

the initial CCHB diagnostic assessment in March 2010.  *Id.*  In light of the ALJ's failure to

comply with the regulations governing the weight to give a non-treating source's opinion, the

Court is unable to meaningfully review the ALJ's decision to credit Dr. Berg's opinion.  The

ALJ's decision is not substantially supported by the record.

---

[10] Plaintiff correctly notes that the ALJ mischaracterized Dr. Berg's opinion.  The ALJ found that Dr. Berg indicated that plaintiff had only "mild" limitations in stress tolerance (Tr. 19); in fact, Dr. Berg found that plaintiff had "moderate" limitations in stress tolerance (Tr. 400).  It is not clear what impact, if any, this error had on the ALJ's disability determination.

**2. Whether the RFC finding is supported**

Plaintiff alleges in ¶ III.G of the Statement of Errors that the ALJ's RFC finding is not supported by substantial evidence. (Doc. 12 at 27-28). Plaintiff asserts that substantial evidence supports Ms. McKinstry's opinion that despite treatment with medication and case management, plaintiff's mental health is "unstable and fragile" (Tr. 626) and he would miss four or more days of work each month due to his mental illness (Tr. 588). (Doc. 12 at 27). Plaintiff further alleges that the treatment notes support his allegations that he experiences debilitating panic attacks. (*Id.* at 27-28, citing Tr. 35, 608, 622). Plaintiff contends that because the VE testified that missing more than one day of work each month would preclude employment (Tr. 63), the ALJ's RFC finding is not supported. (*Id.* at 27).

Plaintiff's allegation of error challenging the ALJ's RFC finding as unsupported is a reformulation of his first assignment of error, which alleges that the ALJ erred in weighing and rejecting the opinion of his mental health care provider, Ms. McKinstry. Because the Court has determined that the ALJ erred in weighing Ms. McKinstry's opinion, plaintiff's fourth assignment of error should be sustained.

**3. The ALJ's Listings determination**

Plaintiff alleges that the ALJ erred by failing to find that he meets Listings 12.03(B) and 12.03(C)(2) for paranoid and psychotic disorders. (Doc. 12, ¶¶ III.E, F). Plaintiff alleges that his CCHB treatment notes and the opinions of Ms. McKinstry establish that he has suffered from a chronic affective disorder for at least two years; his affective disorder imposes more than minimal limitations on his ability to work; and his symptoms and signs are currently attenuated by medication and psychosocial support. (Doc. 12 at 22). Plaintiff further contends that the record establishes evidence of a residual disease process that has resulted in such marginal

adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause him to decompensate. (*Id*.). Plaintiff alleges that minimal stress causes an increase in his anxiety and a need to isolate. (*Id*. at 22-23). Plaintiff asserts that the evidence shows that when he decompensates, he puts his head in the freezer and stays in the house without answering the phone or the door. (*Id*. at 24). Plaintiff argues that based on this evidence, the ALJ should have determined that he meets Listing 12.03(C). (*Id*.).

Plaintiff further alleges that the record evidence establishes that he meets Listing 12.03(B) because it demonstrates deterioration from a previously higher level of functioning and the onset of delusions or hallucinations with "marked" limitations in at least two areas of functioning. (*Id*.). Plaintiff alleges that he has "marked" deficiencies in three areas: activities of daily living, social functioning, and maintaining concentration, persistence, or pace. (*Id*. at 24-26). Plaintiff contends that memory issues and paranoia impose serious limitations on these areas of mental functioning, and the evidence supports Ms. McKinstry's opinion that plaintiff would be unable to persist effectively and appropriately at tasks at least 50% of the time. (*Id*.).

The Court need not address whether the ALJ erred by failing to find that plaintiff meets Listings 12.03(B) and 12.03(C)(2) for paranoid and psychotic disorders. In support of his allegations that the ALJ erred at Step Three of the sequential evaluation process, plaintiff relies largely on the findings and opinions of Ms. McKinstry. The Court has determined that the ALJ rejected Ms. McKinstry's assessment of "extreme limitations" and other opinions without performing a proper weighing analysis. Accordingly, because plaintiff's Listings arguments depend on Ms. McKinstry's opinions, the ALJ should determine on remand after re-weighing the opinion evidence whether plaintiff's mental impairments meet Listing 12.03(B) or Listing 12.03(C)(2).

#### 4. Evidence of non-compliance with treatment

Plaintiff alleges in ¶ III.C of the Statement of Errors that the ALJ erred by finding he was non-compliant with prescribed treatment to the extent that a non-disability decision was warranted. Plaintiff alleges that insofar as the ALJ determined that he was not disabled based on non-compliance with prescribed treatment, the ALJ did not comply with Social Security Ruling 82-59, 1982 WL 31384.[11]

A review of the ALJ's decision indicates that the ALJ considered plaintiff's non-compliance only insofar as it bore on plaintiff's credibility. Plaintiff does not challenge the ALJ's credibility finding. Thus, this assignment of error should be overruled.[12]

## III. Conclusion

This matter should be reversed and remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher v. Sec. of HHS*, 17 F.3d 171, 176 (6th Cir. 1994). Reversal and remand are required for re-weighing of the opinion evidence pertaining to plaintiff's mental impairments and a determination of whether plaintiff

---

[11] SSR 82-59 provides that, "An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source which the Social Security Administration (SSA) determines can be expected to restore the individual's ability to work, cannot by virtue of such 'failure' be found to be under a disability."

[12] To the extent the ALJ considered evidence of non-compliance for any other purpose, the records indicate that plaintiff still had significant limitations in his mental functioning despite occasional non-compliance with his medication regimen. The ALJ noted several instances of plaintiff's noncompliance with his medication regime and concluded that the record shows that plaintiff's "condition greatly improves when he is compliant." (Tr. 18). While the record does demonstrate that plaintiff's condition deteriorated when he failed to take his medication as prescribed, the record indicates that plaintiff was generally compliant with his prescribed treatment but that his medication nonetheless failed to successfully control his symptoms. (See Tr. 501, 2/15/11- "very little improvement with [medications]"; Tr. 504, 10/4/10- "symptomatic, little improvement with [medications]"; Tr. 626, 10/10/12- "In spite of medication and case management, his mental health is unstable and fragile.").

meets Listing 12.03(B) or 12.03(C)(2).  On remand, the ALJ should elicit additional medical expert and vocational expert testimony as warranted.

**IT IS THEREFORE RECOMMENDED THAT**:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to 42 U.S.C. § 405(g).

Date: _Jan. 26, 2015_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

STEVEN McCONNAL,                                    Case No. 1:14-cv-179
    Plaintiff,                                      Dlott, J.
                                                    Litkovitz, M.J.
  vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

26